(No. 5063. November 2, 1929.)

ALBERT HENNESSY, Respondent, v. J. L. NIDAY, M. A. NIDAY and GREAT NORTHERN MINES COMPANY, a Corporation, Appellants.

[282 Pac. 91.]

Dean Driscoll, Sam S. Griffin and B. F. Neal, for Appellants.

Paris Martin, for Respondent.

GIVENS, J.—Respondent, a practical miner and prospector, owned certain mining claims and negotiated with appellant Niday, an attorney at law, looking to appellant Niday becoming interested with respondent in their development and sale. As a result of these negotiations, appellant Niday, as attorney for respondent, organized a corporation with a capital stock of 100,000 shares, three being originally issued, one to respondent, one to appellant Niday and one to appellant Niday's wife, Mrs. Niday, all three of whom became the first directors. Respondent was president of the company and appellant Niday secretary.

After further negotiations with various parties looking to the sale of the properties, it was decided that Niday would put in $800 in cash for the further development of the claims and be credited with $200 for attorney's fees and expenses in organizing the corporation. It was also agreed that respondent should transfer the claims to the company and that the remaining shares should be divided one-half to respondent and one-half to appellant Niday.

An agreement was drawn by Mr. Niday as follows:

"For and in consideration of the sum of Eight Hundred ($800.00) Dollars and the expenditures and labor in incorporating the Great Northern Mines Company, an Idaho corporation with its principal place of business at Boise, Idaho, and other valuable considerations, said money consideration

to be paid into the treasury of said Company and used for the development of the mining properties owned by it, the receipt whereof is hereby acknowledged on behalf of said company, I hereby sell, assign, and transfer to J. L. Niday of Boise, County of Ada, State of Idaho, all of an undivided one-half of the capital stock of said Company consisting of One Hundred Thousand (100,000) shares of the par value of One (1.00) Dollar each, in manner that the grantor and grantee herein may share equally in said stock, 99,997 shares of said stock being at the date hereof unissued. And I hereby authorize the Secretary or other proper officer of said Company to enter this transfer upon the books of said Company, showing that I have this day transferred to said J. L. Niday said stock.

"Dated this 24th day of September, 1925.

(Signed) "ALBERT HENNESSY."

Later respondent located certain additional claims in his own name which appellants contend should have been located for the corporation, and upon respondent's refusal to transfer these claims to the company, appellant Niday and his wife, being a majority of the board, called meetings and ousted respondent as an officer and director of the company. Respondent then sued to have the stock issued to appellants returned to him on the ground that he had not been advised that by the transfer of stock as made under the agreement, 50,000 shares going to respondent and 50,000 to Niday, he (respondent) would lose control of the company and that such had never been his intention, and offered to return to appellants the money they had advanced and pay Niday for his legal services.

Appellants denied that respondent had been deceived, defrauded, etc., and cross-complained, asking. for a transfer of the additional claims mentioned above to the company.

The material findings of the court on the essential incidents of dissension were as follows:

"That plaintiff is not well versed in corporate management, and had no actual knowledge or understanding of the

contents of the various documents he signed in connection with the said incorporation; that he at all times understood, and the defendant J. L. Niday knew that the plaintiff understood, that plaintiff desired at all times to retain control of the management of said corporation; that after such incorporation, plaintiff conveyed by proper deed to said corporation, the said three mining claims; that defendant J. L. Niday at all times thereafter retained possession of all the books and papers connected with the affairs of said corporation; that in June, 1925, plaintiff suggested a substitution of a third person whom he had selected as director in lieu of said M. A. Niday, but that said J. L. Niday objected to such substitution, and it was not made."

As to the additional claims, the court found:

"That the necessary expenditures in locating the claims which were located in the name of the company, were paid out of the money deposited by J. L. Niday as aforesaid; that all of said claims are necessary for the use of said company in making any fair and profitable use of the three claims first hereinabove described, and the location thereof for the benefit of the company was among the duties of plaintiff as its general manager and president, and in pursuance of the understanding he had had with said J. L. Niday."

As to retention of control by respondent, the court found:

"That neither said defendant, J. L. Niday, nor anyone else informed or advised plaintiff, and plaintiff did not understand, that by said instrument this plaintiff was surrendering and transferring to his said attorney, J. L. Niday, and his wife, the control of said defendant corporation and of said mining property; that said defendant J. L. Niday at all of said times well knew that it was not plaintiff's intention to transfer to said defendant and his wife the control of said corporation and of said property and well knew that it was contrary to plaintiff's intention to transfer to said defendant, J. L. Niday and his said wife the control of said corporation and of said mining property, but that it was on the contrary, plaintiff's intention to retain for himself the control of said company and of said mining property.

"That it was the intent of the parties at the time said assignment was executed that plaintiff should retain and own 50,000 shares of the capital stock of said corporation."

The court further found that appellant Niday, in effecting, under the agreement above quoted, a transfer to himself and wife of 50,000 shares of the capital stock without disclosing that thereby respondent would lose control of the company, violated the trust and confidence reposed in him by respondent.

It should also be noted that appellants had refused to accept respondent's tender of the money advanced by appellant Niday, and attorney's fees, and insisted upon a retention of their shares of stock.

. It seems virtually conceded by all parties, and we think it is established by the evidence, that the share of stock issued to Mrs. Niday belonged to respondent, it being issued to Mrs. Niday merely to permit her to act as director.

Appellant Niday on the witness-stand refused to say what he thought the agreement drawn by him and signed by respondent meant or what his rights under it were, but that he was entitled to whatever the agreement gave him.

The trial court evidently with the idea of re-establishing the *status quo* ordered the stock all returned to respondent, appellants' money paid to them, and that respondent transfer the claims subsequently located by him to the company.

Appellants contend that when the agreement was made appellant Niday was not respondent's attorney; that there was no overreaching; that respondent has not come into court with clean hands on account of the later located claims; and that the decree was erroneous because of numerous specified particulars.

The gist of the controversy is what agreement, if any, the parties reached as to the issuance of the stock in the company and what relief may be afforded.

■ This is a suit in equity. Therefore equity may afford relief (*Perkins v. Swain*, 35 Ida. 485, 34 A. L. R. 894, 207 Pac. 585) and will settle all controversies between the

parties with respect to the subject matter of the suit.  (*Gillette v. Oberholtzer*, 45 Ida. 571, 264 Pac. 229.)

At the time of the agreement respondent owned one share of stock, Mrs. Niday held one but it really belonged to respondent, and Niday owned one. Respondent then owned two and Niday one. Respondent intended to retain one-half of the balance and that one-half should be issued to Niday. The finding that respondent desired to retain control is supported by the evidence. Disregarding fractional shares, the result would be that of the 99,997 unissued shares, 49,998 would go to appellant Niday, giving him with the one he already owned 49,999 and respondent the balance of 49,999, plus the two he already owned or 50,001 and control of the company.

The judgment of the lower court is to the above extent reversed and remanded, with instructions to enter judgment in accordance herewith. The portion of the judgment requiring respondent to transfer the later acquired claims to the company is affirmed. Each party will pay his or their own costs.

Budge, C. J., and Wm. E. Lee and T. Bailey Lee, JJ., concur.

Varian, J., dissents.